## No. 1,343.

MRS. DORA LAMBETH, WIFE OF T. O. STARK, VS. LOUIS A. JOFFRION, SHERIFF.

1. In case the judgment debtor rules the sheriff holding *fi, fa.* to file in court a return of his proceedings thereunder, and he responds thereto, and furnishes a statement of the proceeds realized, and distributed thereunder. and includes therein one of his management and administration of the plantation while under seizure, and the creditor traverses the items thereof, the proceedings are assimilitated to an account of administration *eo nomine*, and the creditor's traverse may be treated as an opposition to an account.

2. The sheriff having under his control a valuable plantation, with growing crops thereon, is held to the same degree of responsibility and accountability as any other agent or administrator would be, and to exercise the same care as a prudent owner would, over his own property.

APPEAL from the Twelfth District Court, Parish of Avoyelles. *Blackman*, J.

*E. North Cullom* and *E. N. Cullom, Jr.*, for Plaintiff and Appellee :

1. The account of administration by a sheriff of the crops, rents and revenues of a plantation and disbursements therefor while under seizure, when opposed by the debtor, generally and specially with averments of failure faithfully to account for revenues, and of improper charges, must be proved *aliunde* and especially in the case where credits have been suppressed for crops and rents, and charges made, proved to be improper. 15 Ann. 664; 36 Ann. 841; 29 Ann. 743 ; McKey vs. Scott, Sheriff, So. Reporter, 1887, p. 584; 39 A. N. R.

2.  A sheriff cannot buy a boiler for a plantation under seizure, charge the same to defendant in execution, and sell such boiler never seized and never advertised, under the same execution. 22 Ann. 387; 32 Ann. 195.

3.  The law requires public advertisement to precede the judicial sale of property; the same rule should be observed in a judicial lease, where a sheriff ordered by a court to lease property does so without advertisement, far below its real value and under circumstances showing favoritism on his part; he must pay the amount which the property should have rented for.

*Joffrion & Bordelon* and *Thorpe & Peterman* for Defendant and Appellant:

1.  Execution debtor cannot proceed by opposition to the sheriff's return to recover from the sheriff money and property alleged to have been received by him under writ of *fieri facias* and damages for maladministration of property while under seizure. C. P. Arts. 395, 396; 4 Ann. 280; 14 Ann. 423.

2.  A legal return by a sheriff makes proof of its contents until errors are specially set forth and proved by the party alleging them. 6 Ann. 55.

3.  The burden of proof is on the party alleging breach or failure of duty upon the part of a public officer. 28 Ann. 842; 6 Ann. 175; 1 Greenl. on Ev. sec. 80.

4.  The neglect or failure of one party to prove what is essential to his recovery, is not cured by the evidence of the other party leaving the fact doubtful. 17 Ann. 294; 3 N. S. 228.

5.  Debtor in a writ of *fieri facias*, who, after return filed, participates without protest in the distribution of the fund, is estopped from subsequently claiming a larger sum than that stated in the return. 14 Ann. 389.

The opinion of the Court was delivered by

WATKINS, J.   Claim is made against defendant sheriff for the sum of $8954 87 — the items of which alleged indebtedness appearing in detail in an account which is annexed to the plaintiff's petition — under the following circumstances:

Under a final judgment rendered in a suit entitled Geo. W. Sentell & Co. vs. Mrs. Dora Lambeth, wife, the defendant was directed and required to make a seizure of the property of the defendant in execution — the present plaintiff — and he did, thereunder, make a seizure of her Dora plantation, and, pending sale thereof, same was in his care, and under his administration.   It is charged that this seizure was effected on the 17th of August, 1875, at a time when the place was in process of cultivation in cotton and cane — one-sixth by the owners, and five-sixths by tenants who worked on shares, for money, or for labor; that the defendant (plaintiff here) resided at a distance of four miles from the place, and had placed it under the management and superintendence of an overseer, who was displaced by the sheriff's keeper.   That the said sheriff continued in charge of said plantation, crops and other property, from the date of seizure until it was leased for the subsequent year, 1886, under an order of court, which was

granted on the 8th of December, 1885, an injunction against a sale thereof having been, in the meanwhile, obtained by the plaintiff.

It is for a *general settlement* of the sheriff's agency and management of this property that this litigation was undertaken.

It appears that the property was ultimately sent to sale—the injunction having been finally disposed of—on the 6th of November, 1886, and sold for $16,500, on a credit of twelve months, the purchaser executing his bond therefor.

Soon afterwards the defendant in execution — plaintiff herein — obtained a rule on the defendant sheriff, to show cause on the 9th of December, 1886, why he should not file his return of the writ of seizure and sale; and on the 11th of that month he made a return of the writ and accompanied the same with a full and elaborate statement in detail, of all of his proceedings and doings thereunder, and particularly of his cultivation and management of Dora plantation, and of the crops of cotton and sugar-cane produced thereon, and all of the items and amounts of his expenditures and receipts therefrom, including the lease thereof—the whole covering twenty-two pages of this transcript.

According to his report, the total proceeds of the crops of 1885 and 1886, including the lease price, aggregated $6324 38, the whole of which was expended, except the sum of $1402 65, paid to plaintiff's attorney, and a balance of $335 14, remaining in sheriff's hand, subject to her order.

In opposition to this return and statement of account, the plaintiff has taken the present proceeding, whereby she seeks to recover judgment for the sum stated *supra*.

To the petition of plaintiff, defendant, sheriff, tendered the following exceptions, viz:

1. No cause of action.

2. Because the suit wherein his account is filed, and against which this proceeding is directed had been ended by final judgment, disposition of proceeds, and return of *fi. fa.*, before the same was filed.

3. Because third opposition is not the proper form in which to attack same.

4. Because said proceeding discloses a misjoinder of actions.

On the trial the judge *a quo* found that plaintiff's petition contained an improper cumulation of demands, and she was ordered to elect whether she would pursue her opposition to the account of distribution of the proceeds of sale, or her action against the sheriff for damages, resulting from his alleged maladministration of plaintiff's property

while under seizure—or in default of so doing, that her proceeding should be dismissed.

Thereupon, plaintiff elected to pursue her opposition to the sheriff's account, as evidenced by the account annexed to her petition, reserving her rights of action against him for an account of his management of the property seized, and for and on account of all of his acts of maladministration thereof.

Defendant objected to this election as not being sufficiently explicit, or responsive to the judge's order, but same having been overruled, his counsel reserved a bill of exceptions.

In this state of the pleadings — as nearly as we can understand them — for they are exceedingly prolix and elaborate — the parties went to trial, and judgment was thereon pronounced, and the defendant's account was amended by placing to his debit, the following additional items, viz:

| | |
|---|---:|
| Thirty-seven barrels of molasses | $505 54 |
| Sixteen hogsheads of sugar | 708 00 |
| Sale of cotton seed and ginning | 68 23 |
| Six molasses barrels | 10 80 |
| Balance of rent by Jones | 43 00 |
| For pieux and posts | 58 75 |
| Total | $1,394 32 |

This account was, in all other respects, approved and homologated.

From this judgment the accountant has appealed, and in this court the complainant has filed an elaborate assignment of errors, and, in this wise, the entire case is before us for review.

It is made an important question in this case whether the plaintiff's petition is in the nature of an opposition to an account of administration, and, therefore, in effect, an answer, or is it a direct action. The judge *a quo* at first entertained, and treated it as a *suit*, but subsequently as an *opposition*, and of this the sheriff's counsel complain.

To our thinking the whole proceeding is somewhat anomalous and *sui generis*; one for which we know of no exact precedent. But the *definition* of it will serve no useful purpose, as *mere names* are not at all efficacious in controversies touching the adjustment of matters of account; and the question of the *onus* of proof, is of scarcely greater importance. So we will leave it just where we find it, and treat it as, in some sort, an opposition to a sheriff's account of administration of a plantation under seizure.

Lamboth vs. Sheriff.

The *substantial* facts, as above recited, are proved by the record—the differences between the parties being as to the *details*, only.

It appears that on the 14th of December, 1886, prior to the inauguration of these proceedings on the 2nd of April afterwards, plaintiff's attorney received, and receipted for $300 of the balance in the sheriff's hands, as stated previously, and this is made the foundation of defendant's plea of *estoppel* by conduct and of record which was, over their objection, overruled by the judge *a quo*, and, we think, correctly. The simple acceptance of this sum, "on account," to all appearances, cannot be treated as having such serious consequences, when it was evidently not contemplated, or so considered. There is nothing to induce the belief that the plaintiff, or her counsel considered this as a "settlement" final.

This ruling is perfectly consistent with the view we have entertained of this whole case.

The account rendered by the sheriff, in answer to the plaintiff's rule, and that annexed to the plaintiff's petition of opposition, present different views of the *same* question, because all questions of damages and charges of maladministration are eliminated. There is no question appertaining to the proceeds of sale, or thier distribution. The duty of the sheriff to account for what came into his hands from other sources, is the one sought to be enforced; and, in strictness of speaking, same does not form a part of his return ; or, rather, his return of such independent and extraneous matters does not conclude the plaintiff, and plaintiff's *partial* receipt cannot conclude her.

As at present limited, this is merely a proceeding by an opposition to an account "for moneys had and received," and nothing more.

The following are the items covered by plaintiff's assignment of error, viz :

1. Price of new boiler, $501 75.
2. Difference on rent, $405 05.
3. Error in judgment, $1394 32 – 2301 12.

Or, in other words, she demands that the amounts should be so corrected and increased as to give her judgment for the sum of $3597 74. This sum is far less than that originally demanded; but it seems to show that, since the questions at issue have passed under judicial investigation, her views have become very much modified.

As thus defined and restricted, our duty is confined to an examination of the items of increase mentioned in the judgment of which the sheriff complains, and the additional items demanded by opponent.

We will, for convenience, reverse the order, and dispose of the latter first.

The first question that recurs, is that in reference to the new boiler which the defendant purchased, and placed in position on the plantation, during the grinding season, and in order to prepare the crop for market. An old one had become so inefficient as to be practically useless.

He had applied to the parties to the suit for relief, and they had refused it. He was charged with full responsibility for the management of the place and the crops thereon, as this controversy attests.

His only alternative was to purchase the boiler and charge the plantation. It is not claimed that the price he charged is excessive, nor that the old one was sufficient for the purpose of bearing off the crop. Opponent's complaint is that it was not detached from the place, and *reserved from sale*, or, if sold, that it was not separately appraised and sold, so as to have made its proceeds available to her.

It is clear to our minds that the sheriff did the best and only thing he could have done, in the presence of such an emergency, purchase a new boiler, and that it was clearly the duty of opponent to have more closely watched, and guarded her own interests, and to have enjoined the sale of the boiler as her own, or to have required a separate appraisement.

This demand comes, at this time, with poor grace, and her attempt to put the loss upon the sheriff is quite inequitable.

The claim made for the amount of the difference between the amount of the *actual* lease price of the plantation, during 1886, and that for which it *ought* to have been leased, in the opinion of her witnesses, is a frivolous claim. Taking all the prrof in the record in regard to the cultivation of the place in 1885 and 1886, and it is evident that the amount realized in the latter year was the fair value of it. But, if indeed, it was not, and the sheriff knew it, the loss would be plainly attributable to the maladministration and not recoverable on this suit as it stands.

With regard to the alleged error in the judgment appealed from of $1394 32, it is not sufficiently indicated as to enable us to know how to determine its merits — it is simply a *general demand* for an increase of the judgment, so as to give plaintiff the told sum of $3597 74. This demand must, of course, be remitted to the final *résumé* of the conclusions we arrive at in summing up the case.

In the next place, we will examine the items by which the judge *a quo* increased the defendant's liability, and the first one in order is that of 37 barrels of molasses valued at $505 54.

From the opponent's brief, p. 10, we make this quotation, viz:

"On trial it was proved that 16 hogsheads sugar were made under sheriff's management more than were accounted for by him.

"1. Kimbro, his own witness and former keeper, said: 'I *think I said* there were 79 made, but after refilling there were 78.'"

"But this does not include the molasses."

As against this statement the sheriff's account shows that he charges himself with fifty seven barrels, as the total amount of the yield, and of this the opponent received ten barrels, and has not accounted therefor. This account is supported by his own testimony, and that of two other witnesses, and one of them was his keeper or guardian, Mr. Kimbro, on whose statement, above quoted, opponent relies.

He says distinctly: "The number of bales of cotton, hogsheads of sugar, and barrels of molasses, entered on the account, represent *all* the sugar, cotton and molasses that came into my hands for the plantation."

This statement is circumstantially corroborated by other witnesses. If, in point of fact, this witness had made a different one, as a witness in another suit, in all fairness, to the witness and to the court, it should have been introduced in evidence, so that we might read it, and judge for ourselves.

We are clearly of the opinion that this item should be rejected and disallowed.

The next item to which attention is attracted is that for sixteen hogsheads of sugar, valued at $708, in the judgment, and charged for as having been unaccounted for by the sheriff.

The sheriff charges himself with a total of thirty-seven hogsheads of sugar, and he is entitled to credit for ten that were bonded by the opponent, leaving thirty-seven for which he has accounted. This statement, like the previous one in regard to the molasses, is supported by, identically, the same evidence. The evidence in support of the opponent's theory is identically the same as that in regard to the molasses, and this item must share the same fate, and it must, therefore, be rejected, also.

The item of balance for rent by Jones, $43, must be disallowed and rejected because we find in the record this admission, viz:

"Admitted that B. H. Jones gave to Col. Stark his note for $70 for land rent of 1885, and that Col. Stark has the note in his possession."

This item must, also, be rejected and disallowed, as Col. Stark is plaintiff's husband.

With regard to the three other items appearing in the judgment, the

evidence is too conflicting and too much involved in doubt, to justify us in making any alteration, and we, therefore, conclude to let them remain undisturbed.

On the whole we think the account that was rendered by the sheriff is fair, full and reasonable. At all times the duties of the executive officers of a court are delicate and difficult, and require great courage and the exercise of good judgment, in their performance. When such officers make a fair showing of having discharged them faithfully and honestly, as the defendant appears to have done in this case, we find it a pleasant duty to approve their acts. But, in case they are shown to have been guilty of harsh or oppressive acts, or to have been guilty of acts of maladministration, we shall just as promptly punish and repress them.

The judgment appealed from must be amended, in favor of the defendant sheriff, in the amounts and particulars instanced above.

It is, therefore, ordered and decreed that the judgment appealed from be so amended and corrected as to disallow the following items, viz:

Thirty-seven barrels of molasses............................ $505 54

Sixteen hogsheads of sugar................................ 708 00

Balance of Jones' rent.................................... 43 00

$1,256 54

And that, as thus amended, the judgment be affirmed, with cost of appeal taxed against the opponent and appellee.